IN THE UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHNNY FOSTER, | : | |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | CIVIL NO. 4:CV-13-2999 |
| | : | |
| NURSE COLLEEN LAWRENCE, | : | (Judge Brann) |
| ET AL., | : | |
| | : | |
| Defendants | : | |

**MEMORANDUM**

February 19, 2015

**Background**

This pro se civil rights action pursuant to 42 U.S.C. § 1983 was filed by

Johnny Foster, an inmate confined at the Dauphin County Prison, Harrisburg,

Pennsylvania.  Service of the Complaint was previously ordered.

Named as Defendants are Warden Dominick DeRose of the Dauphin

County Prison, PrimeCare Medical Inc. ("PrimeCare") and two of its employees,

Medical Director Jim Yannick and Nurse Colleen Lawrence.  Plaintiff alleges that

on the morning of August 10, 2013, Nurse Lawrence "yelled out" in front of other

inmates and correctional officers on his cell block that he was HIV positive.  Doc.

1, p. 2, ¶ (b).  As a result, it is alleged that rumors about the Plaintiff spread

throughout the prison which have "greatly raised the chances" of Foster being

harassed by prisoners and correctional staff and caused him sleep deprivation.[1]  Id.

at p. 5.  Plaintiff adds that he filed a grievance regarding Nurse Lawrence's remark

with the other Defendants but they failed to take any action.  He also speculates

that Defendant Lawrence was improperly trained.  The Complaint also includes

pendent state law tort claims.  Plaintiff seeks injunctive and declaratory relief as

well as compensatory and punitive damages.

Warden DeRose responded to the Complaint by filing a motion to dismiss

or in the alternative a motion for more definite statement.  See  Doc. 16.  The

PrimeCare Defendants similarly submitted a motion to dismiss or in the alternative

a motion for more definite statement.  See  Doc. 17.  Both motions are

unopposed.[2]

**Discussion**

Warden DeRose asserts that the claims against him should be dismissed or

in the alternative the Plaintiff should be required to file a more specific pleading

because there are no allegations that DeRose was involved in the alleged

---

[1]   For instance, Plaintiff states that an August 18, 2013  rumor falsely indicated that he was spreading HIV by having sex with other prisoners.  He also asserts that after the incident Lawrence laughs and smirks at him when dispensing his medication.

[2]   M.D. Pa. Local Rule 7.6 provides that any party who fails to file an opposing brief shall be deemed not to oppose the motion.

dissemination of the Plaintiff's medical information.  <u>See</u> Doc. 18, p. 4.  The

PrimeCare Defendants seek similar relief on the grounds that: (1) a prisoner does

not enjoy a right to privacy in his medical information to the same extent as a free

citizen; (2) claims of verbal harassment are constitutionally insufficient; (3) there

is no claim that needed medical treatment was denied or delayed; (4) liability

cannot be imposed under a theory of <u>respondeat</u> <u>superior</u>; (5) the bald assertion of

failure to train is deficient; and (6) supplemental jurisdiction should be declined

with respect to the state law claims.

**More Definite Statement**

Federal Rule of Civil Procedure 12(e) provides that "[a] party may move for

a more definite statement of a pleading to which a responsive pleading is allowed

but which is so vague or ambiguous that the party cannot reasonably prepare a

response. pleading, the party may move for a more definite statement before

interposing a responsive pleading."  Under Federal Rule of Civil Procedure 8(a) a

complaint should consist of  short and plain statements setting forth the basis for

jurisdiction, the claims, and a demand for judgment for the requested relief.  It is

initially noted that although <u>pro</u> <u>se</u> litigants such as Houston are entitled to liberal

treatment,[3] they are not free to ignore the Federal Rules of Civil Procedure

---

[3]  <u>See</u> <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972).

"A court may grant a Rule 12(e) motion when the pleading is so vague or ambiguous that the opposing party cannot respond even with a simple denial in good faith ...."  Hicks v. Arthur, 843 F. Supp 949, 959 (E.D. Pa 1994).

**Motion to Dismiss**

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of complaints that fail to state a claim upon which relief can be granted.  When ruling on a motion to dismiss under  Rule 12(b)(6), the court must "accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007)(quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)).  A plaintiff must present facts that, if true, demonstrate a plausible right to relief.  See Fed. R. Civ. P. 8(a)(stating that the complaint should include "a short and plain statement of the claim showing that the pleader is entitled to relief"); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  This requirement "calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary elements of the plaintiff's cause of action.  Id. at 556.  A complaint must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct 1937, 1949 (2009). "Threadbare recitals of the elements of a cause

of action, supported by mere conclusory statements do not suffice." Iqbal, 129

S.Ct. at 1949.  Legal conclusions must be supported by factual allegations and the

complaint must state a plausible claim for relief.  See id. at 1950.

"Factual allegations must be enough to raise a right to relief above the

speculative level, on the assumption that all the allegations in the complaint are

true (even if doubtful in fact)."  Twombly, at 555.  The reviewing court must

determine whether the complaint "contain[s] either direct or inferential allegations

respecting all the material elements necessary to sustain recovery under some

viable legal theory."  Id. at 562; see also Phillips v. County of Allegheny, 515 F.3d

224, 234 (3d Cir. 2008)(in order to survive a motion to dismiss, a plaintiff must

allege in his complaint "enough facts to raise a reasonable expectation that

discovery will reveal evidence of the necessary element[s]" of a particular cause of

action).  Additionally, pro se pleadings are to be construed liberally, Haines v.

Kerner, 404 U.S. 519, 520 (1972).

**Personal Involvement**

All of the Defendants raise a lack of personal involvement argument.  As

previously noted, Plaintiff has not filed opposing briefs or responded in any

manner to either of the pending motions to dismiss.  Accordingly, both motions

will be deemed unopposed.

A plaintiff, in order to state an actionable civil rights claim, must plead two essential elements:  (1) that the conduct complained of was committed by a person acting under color of law, and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States.  See Groman v. Township of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995); Shaw by Strain v. Strackhouse, 920 F.2d 1135, 1141-42 (3d Cir. 1990).

Furthermore, federal civil rights claims brought under § 1983 cannot be premised on a theory of respondeat superior.  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim.  See Rizzo v. Goode, 423 U.S. 362 (1976); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir. 1976).  As explained in Rode:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . .  [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence.  Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

Rode, 845 F.2d at 1207.

Inmates also do not have a constitutional right to a prison grievance system. See Jones v. North Carolina Prisoners Labor Union, 433 U.S. 119, 137-138

(1977); <u>Speight v. Sims</u>, No. 08-2038, 2008 WL 2600723 at *1 (3d. Cir. Jun 30, 2008)(citing <u>Massey v. Helman</u>, 259 F.3d 641, 647 (7th Cir. 2001)("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner."). Consequently, any attempt by Plaintiff to establish liability against a defendant solely based upon the substance or lack of response to his institutional grievances does not by itself support a constitutional due process claim. <u>See also</u> <u>Alexander v. Gennarini</u>, 144 Fed. Appx. 924, 925 (3d Cir. 2005)(involvement in post-incident grievance process not a basis for § 1983 liability); <u>Pryor-El v. Kelly</u>, 892 F. Supp. 261, 275 (D. D.C. 1995) (because prison grievance procedure does not confer any substantive constitutional rights upon prison inmates, the prison officials' failure to comply with grievance procedure is not actionable).

With the exception of Nurse Lawrence, it is apparent that Foster is primarily attempting to establish liability against the other Defendants based upon either their respective supervisory capacities or their review of his institutional grievances. Pursuant to the above discussion, either approach is insufficient for establishing civil rights liability against those Defendants.

**Right to Privacy**

While a prisoner does enjoy a right to privacy in regards to his personal medical information, that right does not exist to the same extent as a free citizen.

See Doe v. Delie, 257 F. 3d 309, 316 (3d Cir. 2001). Rather, the prisoner's right

is subject to legitimate penological interests. Smith v. Hayman, 489 Fed. Appx.

544, 548 (3d Cir. 2012). It is also noted that in Smith, it was recognized that a

medical professional who inadvertently disclosed confidential medical information

was entitled to qualified immunity. See id. at 549; Iles v. Kcomt, Civil No. 1:12-

CV-395, 2014 WL 297352 *2 (M.D. Pa. Jan. 27, 2014)(Caldwell, J.).

Based upon a review of the Complaint, particularly the lack of factual detail

surrounding the alleged dissemination of Inmate Foster's medical information as

well as Plaintiff's failure to oppose the pending motions to dismiss, a

determination as to whether the one time remark attributed to Nurse Lawrence sets

forth a viable claim of constitutional misconduct is not possible. This Court agrees

with the unopposed request that the submission of an Amended Complaint

providing greater factual clarity as to the purported conduct of Lawrence is

appropriate.

## **Failure to Protect**

The Eighth Amendment's prohibition of cruel and unusual punishment

imposes duties on prison officials to provide prisoners with the basic necessities of

life, such as food, clothing, shelter, sanitation, medical care and personal safety.

See Farmer v. Brennan, 511 U.S. 825, 832 (1994); Helling v. McKinney, 509 U.S. 25, 31 (1993). Under Farmer, an inmate must surmount the high hurdle of showing that a prison official actually knew or was aware of a substantial risk to inmate safety and deliberately disregarded that risk.  Beers-Capitol v. Whetzel, 256 F. 3d 120, 125 (3d Cir.  2001).  This requirement of actual knowledge means that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837.

Based upon a review of the Complaint, there are no facts alleged to show that the remarks attributed to Nurse Lawrence were an intentional attempt by that Defendant to place the Plaintiff in harm's way or that she was aware but deliberately disregarded a risk to the Plaintiff's safety.

**Verbal Abuse**

The Complaint includes allegations that Foster was subjected to verbal harassment.  It is well settled that the use of words generally cannot constitute an assault actionable under § 1983.  Johnson v. Glick, 481 F.2d 1028, 1033 n.7 (2d Cir.); Maclean v. Secor, 876 F. Supp. 695, 698-99 (E.D. Pa. 1995); Murray v. Woodburn, 809 F. Supp. 383, 384 (E.D. Pa. 1993) ("Mean harassment . . . is insufficient to state a constitutional deprivation."); Prisoners' Legal Ass'n v.

Roberson, 822 F. Supp. 185, 189 (D.N.J. 1993) ("[V]erbal harassment does not give rise to a constitutional violation enforceable under § 1983.").

Mere threatening language and gestures of a custodial officer doe not, even if true, amount to constitutional violations.   Balliet v. Whitmire, 626 F. Supp. 219, 228-29 (M.D. Pa.) ("[v]erbal abuse is not a civil rights violation . . ."), aff'd, 800 F.2d 1130 (3d Cir. 1986) (Mem.).   A constitutional claim based only on verbal threats will fail regardless of whether it is asserted under the Eighth Amendment's cruel and unusual punishment clause, see Prisoners' Legal Ass'n, 822 F. Supp. at 189, or under the Fifth Amendment's substantive due process clause.

Verbal harassment, with some reinforcing act accompanying them, however, may state a constitutional claim.   For example, a viable claim has been found if some action taken by the defendant escalated the threat beyond mere words.   See Northington v. Jackson, 973 F.2d 1518 (10th Cir. 1992) (guard put a revolver to the inmate's head and threatened to shoot); Douglas v. Marino, 684 F. Supp. 395 (D.N.J. 1988) (involving a prison employee who threatened an inmate with a knife).   Moreover, alleged instances of verbal harassment which are not accompanied by any physical contact are constitutionally insufficient.  See Hart v. Whalen, 2008 WL 4107651 *10 (M.D. Pa. July 29, 2008);   Wright v. O'Hara, 2004 WL 1793018 *7  (E.D. Pa. 2004)(correctional officer's words and gestures,

including lunging at prisoner with a clenched fist were constitutionally insufficient because there was no physical contact).

There is no indication that the verbal harassment allegedly directed against Foster was accompanied by a reinforcing act involving a deadly weapon as contemplated under Northington and Douglas.  More importantly, it is not alleged that the alleged verbal abuse was accompanied by any physically intrusive behavior.  Given the circumstances described by Plaintiff, the purported verbal abuse, although offensive, were not of such magnitude to shock the conscience as contemplated by this Court in  S.M. v. Lakeland School District, 148 F. Supp.2d 542, 547-48 (M.D. Pa.  2001) and thus, the verbal harassment referenced in the Complaint by itself did not rise to the level of a constitutional violation.

**Failure to Train**

The Complaint includes a vague claim that Nurse Lawrence was not properly trained as evidenced by her disclosure of Plaintiff's medical information. This Court agrees with the PrimeCare Defendants' unopposed argument that the vague allegations in the Original Complaint does not establish a claim that Lawrence's alleged need for more training was so apparent that the failure to provide additional training constituted deliberate indifference.  See  Brown v. Muhlenberg Twp.  269 F.3d 205, 215 (3d Cir. 2001)(the scope of failure to train is

narrow).

## Deliberate Indifference

The PrimeCare Defendants also assert that the Complaint fails to allege any facts which could support a claim that they acted with deliberate indifference to Plaintiff's medical needs.  As previously noted, this argument is unopposed.

The Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated."  Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999) (citing Estelle v. Gamble, 429 U.S. 97 (1976)).  In order to establish an Eighth Amendment medical claim, an inmate must allege acts or omissions by prison officials sufficiently harmful to evidence deliberate indifference to a serious medical need.  See Spruill v. Gillis, 372 F.3d 218, 235 - 36 (3d Cir. 2004); Natale v. Camden Cty. Correctional Facility, 318 F.3d 575, 582 (3d Cir.  2003).  In the context of medical care, the relevant inquiry is whether the defendant was: (1) deliberately indifferent (the subjective component) to (2) the plaintiff's serious medical needs (the objective component).  Monmouth Cty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987); West v. Keve, 571 F.2d 158, 161 (3d Cir. 1979).

A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a  lay person would easily

12

recognize the necessity for a doctor's attention." Mines v. Levi, 2009 WL 839011

*7 (E.D. Pa. March 26, 2009)(quoting Colburn, 946 F.2d at 1023);  Monmouth

Cty. Corr. Inst. Inmates, 834 F.2d at 347.  "[I]f  unnecessary and wanton infliction

of pain results as a consequence of denial or delay in the provision of adequate

medical care, the medical need is of the serious nature contemplated by the Eighth

Amendment." Young v. Kazmerski, 266 Fed. Appx. 191, 193 (3d Cir.

2008)(quoting Monmouth Cty. Corr. Inst. Inmates, 834 F.2d at 347).

    The Supreme Court has established that the proper analysis for deliberate

indifference is whether a prison official "acted or failed to act despite his

knowledge of a substantial risk of serious harm."  Farmer v. Brennan, 511 U.S.

825, 841 (1994).  A complaint that a physician or a medical department "has been

negligent in diagnosing or treating a medical condition does not state a valid claim

of medical mistreatment under the Eighth Amendment [as] medical malpractice

does not become a constitutional violation merely because the victim is a

prisoner." Estelle, 429 U.S. at 106.  When a prisoner has actually been provided

with medical treatment, one cannot always conclude that, if such treatment was

inadequate, it was no more than mere negligence.  See  Durmer v. O'Carroll, 991

F.2d 64, 69 (3d Cir. 1993).   It is true, however, that if inadequate treatment results

simply from an error in medical judgment, there is no constitutional violation.  See

id.   However, where a failure or delay in providing prescribed treatment is deliberate and motivated by non-medical factors, a constitutional claim may be presented.  See id.;  Ordonez v. Yost, 289 Fed. Appx. 553, 555 (3d Cir. 2008) ("deliberate indifference is proven if necessary medical treatment is delayed for non-medical reasons.").

Plaintiff contention that he has been diagnosed as HIV positive satisfies the serious medical need prong of Estelle at this juncture in the proceedings. However, with respect to the subjective deliberate indifference component, this Court agrees that there are no allegations that any Defendant was responsible for any denial or delay in any medical treatment which Plaintiff required.

**Pendent Jurisdiction**

It has also been requested that this Court decline supplemental jurisdiction over Plaintiff's pendent state law claims.  As previously discussed, this argument is unopposed.

With respect to Plaintiff's pendent state law claims, federal courts have jurisdiction over state claims which are related to the federal claims and result from a common nucleus of operative facts.  See United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966); see also Aldinger v. Howard, 427 U.S. 1, 9 (1976).  A district court may decline to exercise supplemental jurisdiction over a claim when

the court has dismissed all claims over which it has original jurisdiction.  See 28

U.S.C. § 1367(c)(3) (1997).  Decisions regarding pendent jurisdiction should be

premised on considerations of judicial economy, convenience and fairness to the

litigants.  New Rock Asset Partners v. Preferred Entity Advancements, 101 F.3d

1492, 1505 (3d Cir. 1996)(citation omitted).

Once jurisdiction has been exercised over the state claim, elimination of the

federal claim does not deprive the court of jurisdiction to adjudicate the pendent

claim.  Id. (citing Lentino v. Fringe Emp. Plans, Inc., 611 F. 2d 474, 479 (3d Cir.

1979)).  However, when the federal claim is dismissed prior to trial, a district court

should decline to decide the pendent state claims, "unless considerations of judicial

economy, convenience, and fairness provide an affirmative justification for doing

so."  Borough of West Mifflin v. Lancaster, 45 F.3d 780, 788 (3d Cir. 1995).  Since

the Plaintiff will be directed to file an Amended Complaint any decision as to

whether jurisdiction should be exercised over Foster's state law claims will be held

in abeyance.  However, the Amended Complaint must sufficiently allege facts to

support any such claims.

**Amended Complaint**

Pursuant to the above discussion, the Defendants' respective motions will be

granted and  Foster will be directed to file an amended complaint addressing the

concerns outlined herein of no more then twenty-five (25) pages in length, which states each claim he wishes to pursue in a clear and concise manner; identifies all defendant[s], and specifies the relief he is seeking.  See Salahuddin v. Cuomo, 861 F.2d 40 (2d Cir. 1988).

Plaintiff is advised that in order to state a viable civil rights claim he must make a showing that the conduct complained of was committed by a person acting under color of law and that said conduct deprived him of a right, privilege, or immunity secured by the Constitution or by a statute of the United States.  Cohen v. City of Philadelphia, 736 F.2d 81, 83, cert. denied, 469 U.S. 1019 (1984).  A prerequisite for a viable civil rights claim is that a defendant directed, or knew of and acquiesced in, the deprivation of his constitutional rights.  Monell v. Department of Social Serv. of the City of N.Y., 436 U.S. 658, 694-95 (1978); Gay v. Petsock, 917 F.2d 768, 771 (3d Cir. 1990); Capone v. Marinelli, 868 F.2d 102, 106 n.7 (3d Cir. 1989).  This is the personal involvement requirement.  Civil rights liability may not be imposed on the principle of respondeat superior.  Capone v. Marinelli, 868 F.2d at 106 (citing Hampton v. Holmesburg Prison Officials, 546 F.2d 1077, 1082 (3d Cir. 1976)).

Foster is also reminded that his Amended Complaint must be complete in all respects.  It must be a new pleading which stands by itself without reference to the

complaint previously filed.  The amended complaint should set forth Plaintiff's

claims in short, concise and legible statements. The Amended Complaint must be

limited to only those claims and Defendants listed in the Original Complaint.  It

should specify which actions are alleged as to which Defendants.  Failure of the

Plaintiff to timely submit an Amended Complaint or otherwise respond to this Order

will result in dismissal of his action for failure to prosecute.  An appropriate Order

will enter.


BY THE COURT:


  s/ Matthew W. Brann
Matthew W. Brann
United States District Judge